NOTICE
Decision filed 01/18/22. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2022 IL App (5th) 180192

NO. 5-18-0192

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Jefferson County. |
| | ) | |
| v. | ) | No. 16-CF-434 |
| | ) | |
| JOEVON TAYLOR, | ) | Honorable |
| | ) | Jerry E. Crisel, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE BOIE delivered the judgment of the court, with opinion.
Justices Cates and Vaughan concurred in the judgment and opinion.

**OPINION**

¶ 1    The defendant, Joevon Taylor, appeals his conviction in Jefferson County of being an armed habitual criminal. 720 ILCS 5/24-1.7 (West 2016). The indictment charging the defendant with being an armed habitual criminal cited two predicate felony convictions for the charge: aggravated battery resulting in great bodily harm in Jefferson County case No. 13-CF-223 and unlawful delivery of a controlled substance in Jefferson County case No. 10-CF-400.

¶ 2    The defendant appeals on two bases. The first issue is whether defense counsel was ineffective for failing to stipulate to the defendant's felon status under the armed habitual criminal statute, thereby allowing the jury to consider potentially prejudicial evidence of the defendant's prior convictions. The second issue before this court challenges the defendant's sentence as an improper double enhancement where the trial court found the defendant's prior aggravated battery

1

conviction to be a factor in aggravation at sentencing where it was used as an element in the offense of being an armed habitual criminal.

¶ 3                                    I. BACKGROUND

¶ 4      A jury convicted the defendant of being an armed habitual criminal (*id.* § 24-1.7(a)), unlawful possession of a weapon by a felon (*id.* § 24-1.1), and unlawful possession of a defaced firearm (*id.* § 24-5(b)). The trial court merged the unlawful possession of a weapon by a felon and the unlawful possession of a defaced firearm charges into the single count of being an armed habitual criminal for sentencing purposes and imposed a prison term of 10 years in the Illinois Department of Corrections.

¶ 5      The defendant's jury trial commenced on March 21, 2017. Sergeant Brian Huff (Sgt. Huff) testified that he was employed with the Mt. Vernon Police Department and on patrol on November 26, 2016, at approximately 1:50 a.m. Sgt. Huff testified that he responded to a request at Geo's, a local bar, where the bartenders requested law enforcement's aid in clearing the bar out. When leaving from the call, Sgt. Huff testified that he saw a silver GMC sport utility vehicle (SUV) at the intersection of 24th Street and Casey Avenue that failed to stop at a stop sign. Sgt. Huff pulled out and activated his lights to conduct a traffic stop on the vehicle. Initially, the SUV did not stop, and when it did, the driver fled from the vehicle on foot. Sgt. Huff testified that he pursued the driver, later identified as the defendant. According to Sgt. Huff, the defendant fell in between two houses located at 423 and 425 South 17th Street.

¶ 6      Sgt. Huff testified that the defendant ran through an alley and then slipped and fell before turning back toward the south behind 1604 Cherry Street. Sgt. Huff testified that the defendant got back up and started running in the backyard of 1604 Cherry Street, and Sgt. Huff "could see things flying out of his hands like he was taking things out of his pockets." Sgt. Huff testified that the defendant came to the front of 1604 Cherry Street and then headed back east to 1506

Cherry Street. At this point, the defendant fell down again, and before he could get up, Sgt. Huff deployed his Taser on the defendant and took him into custody at 1506 Cherry Street.

¶ 7    Sgt. Huff testified that he had radioed for help, and Corporal Travis Chapman (Cpl. Chapman), Officer Adam Hurst, Officer Greenwood, and Officer Carlton[1] arrived to provide backup. Cpl. Chapman arrived first and helped Sgt. Huff remove the Taser probes from the defendant, and Officer Greenwood transported the defendant from the scene. Then, Sgt. Huff and Cpl. Chapman backtracked the path of the foot pursuit to recover evidence. Sgt. Huff testified that he saw the defendant throw a black bag and another item later determined to be suspected cannabis that he had been carrying, but Sgt. Huff admitted that he never saw the defendant with a handgun. Sgt. Huff found cannabis and a black bag that smelled of cannabis in the backyard of 1604 Cherry Street and found a cell phone and a $10 bill along the same path as the foot pursuit. Sgt. Huff testified that Cpl. Chapman found a handgun between 423 and 425 South 17th Street in the area where the defendant fell, within 15 feet of the cell phone and $10 bill.

¶ 8    The cell phone was locked, and officers were never able to determine to whom it belonged. Sgt. Huff testified that Cpl. Chapman put the handgun in a bag and, then, Sgt. Huff carried the bag to his squad car. Sgt. Huff testified that he touched the handgun within a minute to see how it was orientated in the bag so that he would know which direction it was pointing for safety purposes. Sgt. Huff testified it was a cold night, below or close to freezing, and that the handgun was warm to the touch. Sgt. Huff identified People's exhibit No. 6 as a photograph of the handgun where it was found. The photograph depicts a black handgun on the ground surrounded by brown leaves and has some leaves and grass on top of the handgun. There was no rust on the handgun, which Sgt. Huff believed was in relatively good shape, and the serial number had been removed.

---

[1]First names for Officers Greenwood and Carlton do not appear in the record.

3

¶ 9    Sgt. Huff testified that his squad car was equipped with a video camera, which captured the traffic stop but not the foot pursuit. On cross-examination, Sgt. Huff admitted that he did not know who occupied the houses at 423 and 425 South 17th Street, where the handgun was recovered. The yellow house appeared vacant at the time of the traffic stop and still appeared vacant the weekend before trial, when Sgt. Huff photographed the area. Sgt. Huff described the defendant as not wearing a coat or gloves at the time of the incident.

¶ 10    Forensic scientist Amy Hart testified that she was unable to find any fingerprints on the handgun, magazine, or 10 live cartridges recovered in this case. Hart was not asked to analyze any other items for prints. Forensic scientist Jay Winters testified that he performed a DNA analysis on the gun in this case. On direct examination, Winters claimed that there was a mixture of DNA from two individuals on the gun, and he claimed that the defendant "could not be excluded as a potential contributor to that mixture." However, on cross-examination, Winters admitted that no one could be excluded as having contributed the DNA and that "the likelihood of that profile being anyone else—basically it could be anyone else." Officer Hurst testified that he conducted an inventory search of the SUV on November 26, 2016, and recovered a bottle of alcohol as well as a birth certificate in the defendant's name.

¶ 11    Cpl. Chapman testified that he was on duty on November 26, 2016. At around 1:50 a.m., he heard Sgt. Huff radio that he was in a foot chase around 425 South 17th Street and Cherry Street. Cpl. Chapman testified that he and Sgt. Huff walked the path of the foot chase with their flashlights searching for discarded evidence. They found a small plastic bag of cannabis and a black duffle bag behind 1604 Cherry Street where Sgt. Huff had seen the defendant throw some items. As Cpl. Chapman approached 1604 Cherry Street, he smelled raw cannabis. In between 423 and 425 South 17th Street, Sgt. Huff found money and a cell phone while Cpl. Chapman found the handgun. Cpl. Chapman described the handgun as a black semiautomatic high point 9-millimeter that was lying in the grass and leaves between the two houses, but closer to 423 South

4

17th Street. Cpl. Chapman described the serial numbers on the firearm as defaced, as though someone tried to scratch off the serial numbers. Cpl. Chapman testified that he put on a latex glove, picked up the handgun, and did not recall the temperature or feel of the handgun as warm or cold. On cross-examination, Cpl. Chapman explained that the distance between 1604 Cherry Street and 423 and 425 South 17th Street is about "half a block." Cpl. Chapman testified that the gun, phone, and money were found in between 423 and 425 South 17th Street and that the gun was about 15 feet away from the phone and money.

¶ 12    Prior to the jury trial, at the final pretrial hearing held on March 17, 2017, the court inquired as to how the parties wanted the charges read to the jury. The following discussion occurred:

"MR. QUINN [(DEFENSE COUNSEL)]: We want to hear the Indictment as it's written.

THE COURT: All right. And so then as to—so we make sure of this, as to the armed habitual criminal charge, would I read then that he has been convicted of aggravated battery, great bodily harm in Jefferson County case number and then the other one?

MR. RICE [(ASSISTANT STATE'S ATTORNEY)]: Yes, sir. I believe it's an element of the offense.

THE COURT: Yes. Is that your understanding Mr. Quinn?

MR. QUINN: That is—that is my understanding, as well, [Y]our Honor."

¶ 13    During the defendant's jury trial, the trial court read the charges to the jury, in relevant part, as follows:

"In this particular case the Defendant, Joevon C. Taylor, is charged with the following offenses and I will read the charges to you now. He's charged in Count I of the Bill of Indictment charges as follows: That on November 26, 2016, in

5

Jefferson County, Illinois, Joevon C. Taylor committed the offense of armed habitual criminal in that said Defendant knowingly possessed a firearm, after having been convicted of aggravated battery, great bodily harm, in Jefferson County case No. 13-CF-223, an[d] unlawful delivery of a controlled substance, in Jefferson County No. 10-CF-400. Count II charges and alleges that on or about November 26, 2016, in— in Jefferson County, Illinois, Joevon C. Taylor committed the offense of unlawful possession of a weapon by a felon, in that said Defendant, a person who has been convicted of a forcible felony under the law of Illinois, knowingly possessed a firearm[.]"

¶ 14 The first sentence of the State's opening statement was that the defendant was "[a] felon with a firearm who fled from police." The State further argued to the jury that "the defendant is a convicted felon. He has convictions including unlawful delivery of a controlled substance, a forcible felony of aggravated battery." The State went on to state:

"[Y]ou'll see that certified convictions that we'll introduce that will show you that he's a convicted felon, he has a conviction for unlawful delivery [of] a controlled substance and aggravated battery. You'll begin to understand that he's a felon who had a firearm so he fled from police."

¶ 15 The State asked the circuit court to admit People's exhibit Nos. 17 and 18, certified copies of the defendant's convictions for unlawful delivery of a controlled substance and aggravated battery. People's exhibit Nos. 17 and 18 were then admitted and published to the jury without objection. People's exhibit No. 17 showed that the defendant had been convicted of two counts of unlawful delivery of a controlled substance, and it noted that an additional felony and misdemeanor were being dismissed in exchange for his guilty plea to those two delivery charges. At this point, the State rested its case, and the defense did not present any evidence or call any witnesses.

6

¶ 16    During closing arguments, the State told jurors that they had heard for the last two days about a felon who had a firearm and who fled from the police, and the State reminded the jurors that the last piece of evidence that the jurors saw was certified copies of the defendant's convictions. The State argued that the defendant fled because he had a firearm and argued that he had to get rid of it because he had multiple felony convictions. Several of the State's proposed jury instructions referenced the nature of the defendant's prior convictions for unlawful delivery of a controlled substance and aggravated battery, and those instructions were given without objection by the trial court. The jury found the defendant guilty on all three counts on March 22, 2017.

¶ 17    In his July 24, 2017, motion for a new trial, defense counsel argued, among other things, that the defendant was denied his right to a fair trial because the State presented the nature of the qualifying felony offenses to the jury in order to establish the elements of the armed habitual criminal charge. The defendant alleged in his motion that "[c]ounsel for the Defendant indicated at the final pretrial hearing that the Defendant was willing to stipulate that the Defendant had the qualifying felony offenses for Counts I & II, but the State chose to present Certified Copies of the felony convictions in 13-CF-223 and 10-CF-400 to the jury." The motion noted that "[t]he general rule is that the State is not allowed to tell the jury the name and nature of the qualifying felony offenses if the Defendant is willing to stipulate to same."

¶ 18    At the August 25, 2017, hearing on the posttrial motion, defense counsel argued that the defendant offered to stipulate at the final pretrial hearing to the defendant's prior felony convictions, stating:

          "This is one that it's my contention that at the Final Pretrial Hearing we offered
          to stipulate but I believe—and the State said, well, I think that we have the right to—I—
          I think that we have the right to present that evidence anyway. And at that point and time
          I kind of punted on that issue.

7

And so then when they went ahead and presented that evidence at trial, I—I think that that may have been a violation of what the *Walker* case indicates is or is not allowed."

¶ 19 The transcript of the final pretrial hearing does not reflect the defendant's offer to stipulate to the prior felony convictions. The trial court denied the posttrial motion and proceeded to the sentencing hearing. Defense counsel and the State agreed that, for purposes of sentencing under the one-act, one-crime rule, all three convictions would merge into the most serious offense, the Class X armed habitual criminal conviction. All pending traffic tickets were dismissed. The State argued at the sentencing hearing that there were three factors in aggravation: that the defendant had a criminal history, that the defendant's conduct caused or threatened serious harm, and that a greater sentence was necessary to deter others.

¶ 20 Defense counsel argued that other than the two convictions that the State used to charge the armed habitual criminal offense, the defendant's other offenses were minor. Defense counsel argued that the defendant was respectful, that the incident here was the result of drug or alcohol use, and that the defendant needed the opportunity to support his seven children. During his statement of allocution, the defendant explained that he ran from the vehicle because he had been drinking and did not have a license or insurance. He explained that he "never had a weapon."

¶ 21 The trial court found that the defendant's criminal history and the need to deter others were the only two factors in aggravation at sentencing. Though the State had argued that the defendant's conduct caused or threatened serious harm, the trial court disagreed. When discussing the defendant's criminal history, the court explained:

"Obviously, first off, I do consider your criminal history and, for the most part,— well, I should say, if you're looking at just numbers, most of the numbers are—are basically pretty minor offenses but there are number—there are some that aren't. And they would be, of course, delivery of a controlled substance, and obstructing justice, and

8

the aggravated battery, of course, and criminal damage to property—government property. Those are all serious and—and some are violent crimes also called forcible felonies, I think. That concerns me. It concerns me that you're 33 years old and you're behaving this way."

¶ 22 The trial court sentenced the defendant to 10 years' incarceration in the Department of Corrections. Defense counsel filed a motion to reconsider the sentence on September 7, 2017, asking the trial court to reconsider the weight it gave to its findings regarding the factors in aggravation and mitigation. At the March 22, 2018, hearing on the defendant's motion to reconsider sentence, the State argued that the defendant "would have a history of prior delinquency. Given that he was eligible for the charge of armed habitual criminal, he would've had at least two prior felony convictions." The State also argued, "I don't believe ten years on a Class X felony where some of the elements of that charge are a serious felonious criminal history—I don't believe that the ten-year sentence is overly oppressive ***."

¶ 23 In explaining its decision to deny the motion to reconsider, the trial court told the defendant, "One of the main things was your criminal history, which is not good; otherwise, you wouldn't have been charged with armed habitual criminal." The court elaborated that in looking at and reviewing the presentence investigation report as to the defendant's criminal history:

"You had been unsuccessfully discharged from conditional discharge and probation it looks like four times previously, and you have done a term in the state penitentiary once, and then you have done some—a term in juvenile detention once as well. At any rate, your record is what I considered, and frankly, another thing that I also considered was the fact that it—well, I take that back. I did not consider the firearm because that's the part of the charge. At any rate, that was the main consideration

9

was your record, and had it been a better record—you can't have a very good record and have armed habitual criminal filed against you, but you could have had a somewhat better record. It would have made a difference."

¶ 24 On appeal, the defendant raises two issues. First, the defendant asks this court to reverse his conviction because he was denied his right to effective assistance of counsel where trial counsel failed to stipulate to the defendant's felon status, resulting in the jury hearing the nature of the defendant's prior convictions. Next, the defendant argues that his sentence was the result of an improper double enhancement where the trial court considered the defendant's prior aggravated battery conviction to be a factor in aggravation at sentencing even though that conviction was an element of the armed habitual criminal charge.

¶ 25                                   II. ANALYSIS

¶ 26                       A. Ineffective Assistance of Counsel

¶ 27 In criminal prosecutions, a defendant has a constitutional right to effective assistance of counsel. U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8; *People v. Moore*, 2020 IL 124538, ¶ 28. Claims alleging ineffective assistance of counsel are governed by the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *People v. Domagala*, 2013 IL 113688, ¶ 36. Whether counsel was ineffective is reviewed *de novo*. *People v. Max*, 2012 IL App (3d) 110385, ¶ 64.

¶ 28 In order to establish ineffective assistance of trial counsel, a defendant must first demonstrate that counsel's performance was deficient in that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the sixth amendment. *Strickland*, 466 U.S. at 687. "More specifically, a defendant must show that counsel's performance was objectively unreasonable under prevailing professional norms and that there is a 'reasonable

10

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *Domagala*, 2013 IL 113688, ¶ 36 (quoting *Strickland*, 466 U.S. at 694). "A ' "reasonable probability" ' is ' "a probability sufficient to undermine confidence in the outcome" ' of the proceeding." *People v. Peterson*, 2017 IL 120331, ¶ 79 (quoting *People v. Simpson*, 2015 IL 116512, ¶ 35, quoting *Strickland*, 466 U.S. at 694). A defendant must satisfy both prongs of the *Strickland* standard to prevail on an ineffective assistance of counsel claim. *Id.*

¶ 29    Here, the defendant argues that his trial counsel was ineffective for failing to stipulate to his qualifying felon status under section 24-1.7(a) of the Criminal Code of 2012 (Code) (720 ILCS 5/24-1.7(a) (West 2016)), thereby allowing the jury to consider the highly prejudicial evidence that the defendant was previously convicted of aggravated battery resulting in great bodily harm and unlawful delivery of a controlled substance. The defendant is correct that, where the only purpose for admitting evidence of a prior conviction is to prove a defendant's felon status, the trial court is obligated to accept the defendant's stipulation to his felon status because allowing the jury to learn the name and nature of the conviction is too prejudicial. *People v. Walker*, 211 Ill. 2d 317, 338 (2004).

¶ 30    The State's brief first focuses on the armed habitual criminal statute. Section 24-1.7(a) of the Code reads as follows:

> "(a) A person commits the offense of being an armed habitual criminal if he or she receives, sells, possesses, or transfers any firearm after having been convicted a total of 2 or more times of any combination of the following offenses:
>
>> (1) a forcible felony as defined in Section 2-8 of this Code;
>>
>> (2) unlawful use of a weapon by a felon; aggravated

unlawful use of a weapon; aggravated discharge of a firearm; vehicular hijacking; aggravated vehicular hijacking; aggravated battery of a child as described in Section 12-4.3 or subdivision (b)(1) of Section 12-3.05; intimidation; aggravated intimidation; gunrunning; home invasion; or aggravated battery with a firearm as described in Section 12-4.2 or subdivision (e)(1), (e)(2), (e)(3), or (e)(4) of Section 12-3.05; or

(3) any violation of the Illinois Controlled Substances Act or the Cannabis Control Act that is punishable as a Class 3 felony or higher." 720 ILCS 5/24-1.7(a) (West 2016).

¶ 31 The State argues that pursuant to the armed habitual criminal statute the State was required to prove, as an element of the offense, that the defendant had been convicted of two or more specific types of predicate felonies in order to prove the defendant was an armed habitual criminal. The State argues that a stipulation that the defendant was a felon would have been fruitless because the State was required to prove not just felon status but that the defendant was convicted of the specific types of felony. Therefore, failure to make that stipulation could not be considered ineffective assistance of counsel. The State claims that, in order to prove the offense, the evidence of the name and nature of the defendant's prior felony convictions was necessarily before the jury.

¶ 32 In *People v. Moore*, 2020 IL 124538, the Illinois Supreme Court addressed a similar issue with regard to a charge of unlawful possession of weapon by a felon, where the charge included a requirement that the State prove, as an element of the offense, that the defendant was a felon (720 ILCS 5/24-1.1(a) (West 2012)). The supreme court cited its prior decision in *Walker*, 211 Ill. 2d at 337-38, for the proposition that, in cases requiring proof of felon status, disclosing the nature of

12

a defendant's prior conviction created a risk of unfair prejudice. *Moore*, 2020 IL 124538, ¶ 38.

¶ 33    The court in *Walker* adopted the reasoning of the United States Supreme Court decision of *Old Chief v. United States*, 519 U.S. 172 (1997). The defendant in *Old Chief* was charged under a federal statute making it unlawful for a felon to possess a firearm. *Id.* at 174. Before trial, the defendant offered to stipulate to his prior conviction to avoid revealing the name of the charge and its nature. *Id.* at 174-76. The government refused to join in the stipulation, and the trial court allowed the government to introduce the order of judgment and commitment for the defendant's prior felony of " 'assault resulting in serious bodily injury.' " *Id.* at 177. The United States Supreme Court resolved the issue by applying Rule 403 of the Federal Rules of Evidence, which provided that " '[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.' " *Id.* at 180 (quoting Fed. R. Evid. 403). The Supreme Court held that, when the government need only to prove a defendant's felon status, evidence of the name and nature of the prior conviction should generally be excluded because it has no probative value and presents a substantial danger of unfair prejudice. *Id.* at 185-92. The Supreme Court reasoned that the jury could consider the defendant's prior "bad act" as "raising the odds" that he committed the offense charged "or, worse, as calling for preventative conviction" even if the defendant was innocent. *Id.* at 180-81. The Supreme Court opined that a trial court's evaluation of an evidentiary item's probative value and potential for undue prejudice should be guided by considering the result of that assessment alongside similar assessments of evidentiary alternatives. *Id.* at 184-85.

¶ 34    The Illinois Supreme Court in *Moore* noted that, after the decision in *Walker*, Illinois adopted the Illinois Rules of Evidence and Rule 403 of the Illinois Rules of Evidence is virtually

13

the same as the federal rule at issue in *Old Chief*. Ill. R. Evid. 403 (eff. Jan. 1, 2011) ("Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."). The *Moore* court went on to hold that counsel's performance was deficient where, if defense counsel had offered to stipulate to the defendant's prior conviction, the trial court would have been obligated to accept the stipulation. *Moore*, 2020 IL 124538, ¶ 40. The supreme court went on to reason that, "[g]iven the high risk of prejudice inherent in disclosing defendant's prior murder conviction, defense counsel's failure to stipulate to his felon status was objectively unreasonable." *Id.*

¶ 35    The State correctly argues that the armed habitual criminal statute requires the State to prove more than the unlawful possession of a weapon by a felon statute, which was the charge in *Walker*, that required only that the State prove the defendant was a convicted felon. Under the armed habitual criminal statute at issue in this case, the State must prove that the defendant was in possession of a firearm while having two or more prior convictions of the type of enumerated qualifying offenses listed in the statute. 720 ILCS 5/24-1.7 (West 2016).

¶ 36    The State further argues that "had trial counsel stipulated that defendant had been convicted of aggravated battery and unlawful delivery of a controlled substance the jury would still be made aware that those convictions existed because they are part of the AHC charge." However, nothing in the armed habitual criminal statute requires a court to examine a defendant's underlying conduct in commission of the enumerated offenses[2] in order to find that the State has sustained its burden

---

[2]The exception in the statute relates to prior convictions involving unenumerated "forcible felonies," as to which the State must demonstrate that the felony of which defendant was convicted falls into that category. *People v. Perkins*, 2016 IL App (1st) 150889, ¶ 7 n.1. Further, where the State seeks to use a conviction from a foreign jurisdiction as a predicate forcible felony, the State must show that the foreign conviction satisfied the elements of one of the enumerated forcible felonies, as defined in the Code (720 ILCS 5/2-8 (West 2020)), or fell within the residual clause ("and any other felony which involves the

of proof. *People v. Perkins*, 2016 IL App (1st) 150889, ¶ 7.

¶ 37     We acknowledge that the State has the right and, in fact, the duty to establish the elements of the crime charged. *Walker*, 211 Ill. 2d at 335. The State also has an interest in presenting its case in its own way by telling the story as the State wishes. *Id.* The supreme court, in *Walker* and later *Moore*, found that, where the prosecution's sole purpose for introducing evidence of a defendant's prior felony conviction is to prove his status as a convicted felon and the defendant offers to stipulate to this element, the probative value of the name and nature of the prior conviction is outweighed by the risk of unfair prejudice and, thus, should be excluded. See *id.* at 341; *Moore*, 2020 IL 124538, ¶¶ 38-40. We believe that the same analysis holds true for the proof of predicate felonies under the armed habitual criminal statute.

¶ 38     While we agree that there would be no benefit to the defendant by stipulating to the convictions of aggravated battery and unlawful delivery of a controlled substance and the State would not meet its burden with a stipulation simply that the defendant was a felon, the State ignores a third alternative. The defendant could avoid the prejudicial effect of the jury hearing the name and nature of his prior felony charges by stipulating that the defendant had previously been convicted of two offenses that were qualifying offenses under the armed habitual criminal statute. See[3] *People v. Williams*, 2014 IL App (1st) 120661-U, ¶ 6 (parties stipulated that defendant had

---

use or threat of physical force or violence against any individual" (*id.*)). *People v. McGhee*, 2020 IL App (3d) 180349, ¶ 56.

    [3]The cases referenced here were unpublished orders pursuant to Illinois Supreme Court Rule 23(b) (eff. July 1, 2011). Rule 23(e)(1) provides that an order entered pursuant to subpart (b) is not precedential and may not be cited by any party except to support contentions of double jeopardy, *res judicata*, collateral estoppel, or law of the case. Ill. S. Ct. R. 23(e)(1) (eff. July 1, 2011). While the Illinois Supreme Court amended Rule 23(e)(1), stating that a nonprecedential order entered under Rule 23(b) after January 1, 2021, may be cited for persuasive purpose, the aforementioned orders were issued prior to that change. See Ill. S. Ct. R. 23(e)(1) (eff. Jan. 1, 2021). We are not citing these cases for persuasive or precedential purposes but do so as an illustration of factual stipulations that have been utilized in the lower courts when conducting trials under the armed habitual criminal statute.

two prior felony convictions under specified case numbers and dates, which convictions served as qualifying offenses for armed habitual criminal; the nature of these previous felony convictions was not introduced at trial); *People v. Hummons*, 2011 IL App (1st) 101500-U, ¶ 9 (jury heard parties' stipulation that the defendant had "been convicted two times of felony offenses referenced in 720 ILCS 5/24-1.6(a)(1), armed habitual criminal"); *People v. Thornton*, 2020 IL App (4th) 180681-U, ¶ 38 (State and defense counsel agreed to stipulate " 'That on April 8, 2018, the defendant was a habitual criminal under Illinois Statutes.' "); *People v. Ash*, 2015 IL App (1st) 130181-U, ¶ 46 (parties stipulated: " 'It is hereby stipulated by an[d] between the parties that Michael Ash has two felony convictions in his background which are qualifying felony offenses under the Armed Habitual Criminal Statute, under Case Nos. 91 CR 23561 and 04 CR 22622.' ").

¶ 39    The defendant should be judged only on the crime charged and not based on improper grounds due to the admission of evidence that carries unfairly prejudicial baggage. The evidentiary significance of the predicate convictions is indistinguishable from that of a stipulation, except that one creates a substantial risk of prejudice and the other does not. See *Walker*, 211 Ill. 2d at 338. *Moore* was not predicated solely on the nature of the underlying offense but that, "if defense counsel had offered to stipulate to defendant's prior conviction, the trial court would have been obligated to accept the stipulation." *Moore*, 2020 IL 124538, ¶ 40. In cases requiring proof of felon status, disclosing the nature of a defendant's prior conviction created a risk of unfair prejudice, and equally probative and nonprejudicial evidence was available, had defense counsel chosen to stipulate to qualifying convictions.

¶ 40    Like in *Moore*, defense counsel here appeared to be operating under a misapprehension of the law. Though defense counsel claimed in his posttrial motion that he had offered to stipulate to the defendant's felon status at the final pretrial hearing, the record fails to reflect such an offer. At

16

the final pretrial hearing, the trial court inquired whether it was to read the indictment as written, specifically mentioning the name and nature of the prior convictions. The State confirmed that this was its understanding, and defense counsel said, "That is—that is my understanding, as well, [Y]our Honor." This was the only discussion within the record regarding how the name and nature of the prior convictions would be placed before the jury.

¶ 41    Defense counsel made no objections to the State referencing the name and nature of the prior convictions in its opening statements or closing argument, to the convictions being referenced in five separate jury instructions, or to the admission of the certified copies of the defendant's prior convictions, which also referenced *additional* crimes that were not necessary to establish either the defendant's charge for being an armed habitual criminal or possession of a weapon by a felon.

¶ 42    In the present case the indictment charging the defendant with being an armed habitual criminal cited two predicate felony convictions for the charge: aggravated battery resulting in great bodily harm in Jefferson County case No. 13-CF-223 and unlawful delivery of a controlled substance in Jefferson County case No. 10-CF-400. The offense of aggravated battery resulting in great bodily harm is not an enumerated offense described in subsection (a)(2) or (a)(3) of the armed habitual criminal statute. 720 ILCS 5/24-1.7(a)(2)-(3) (West 2016). Therefore, to qualify as a predicate offense under the statute, the prior aggravated battery must be a "forcible felony" under the definition section of section 2-8 of the Code (*id.* § 2-8). Whether an offense constitutes a "forcible felony" is an issue of law. *People v. Schultz*, 2019 IL App (1st) 163182, ¶ 19. Aggravated battery resulting in great bodily harm is one of the enumerated offenses listed under the forcible felony definition section at section 2-8 of the Code (720 ILCS 5/2-8 (West 2016)).

¶ 43    Therefore, in addition to showing that the defendant had two prior qualifying convictions under the armed habitual criminal statute, in the present case the State would also be required to

show proof that the underlying aggravated battery resulted in great bodily harm and therefore qualified as a forcible felony under section 2-8. However, because whether the conviction constituted a "forcible felony" was a question of law for the circuit court to decide, had the trial court made the legal finding that the defendant's conviction constituted a forcible felony, that element would have been satisfied. See *People v. Webb*, 2018 IL App (3d) 160403, ¶¶ 17-18. Had the trial court made such a finding, defense counsel could have mitigated any prejudice by stipulating that the defendant's two prior convictions were qualifying offenses under the armed habitual criminal statute, and this needless repetition would not have occurred. If trial counsel had offered to stipulate as discussed above, the trial court would have necessarily accepted the offer to stipulate.

¶ 44    We agree with the defendant that the only purpose of the evidence of the name and nature of the defendant's prior felony convictions was to prove that the defendant had two or more qualifying convictions under the armed habitual criminal statute which served to limit his right to possess a firearm. The prejudicial effect of placing the name and nature of the prior felonies repeatedly before the jury outweighed the probative value. The State does not argue, and it is clear under the facts of this case, that defense counsel's failure to stipulate to the prior qualifying convictions was not trial strategy. Therefore, counsel's performance was objectively unreasonable under prevailing professional norms and constituted deficient performance under *Strickland*.

¶ 45    Having determined that the defendant satisfied the first prong of the *Strickland* standard, we now consider the second prong—whether defense counsel's deficient performance prejudiced the defendant. To establish the second prong, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Domagala*, 2013 IL 113688, ¶ 36 (citing *Strickland*, 466 U.S. at 694). "[A]

18

reasonable probability that the result would have been different is a probability sufficient to undermine confidence in the outcome—or put another way, that counsel's deficient performance rendered the result of the trial unreliable or fundamentally unfair." *People v. Evans*, 209 Ill. 2d 194, 220 (2004).

¶ 46    For many of the same reasons stated above, we also conclude that the defendant satisfied the second prong of the *Strickland* standard—that defendant suffered prejudice from defense counsel's deficient performance. Here, the jury heard that the defendant had been previously convicted of aggravated battery resulting in great bodily harm and unlawful delivery of a controlled substance—the former, a crime jurors could potentially associate with general bad character, and the latter, an act that is often associated with illegal gun use. The jury may also have been more likely to infer that the contraband found belonged to the defendant.

¶ 47    Our supreme court has held that the prejudice prong for ineffective assistance of counsel is similar to the closely balanced evidence first prong of plain-error review. *People v. White*, 2011 IL 109689, ¶ 133. This is true because both analyses are evidence-dependent and result-oriented. *Id.* ¶ 134. In this matter, the State's proof that the defendant was in possession of a handgun was largely circumstantial and was closely balanced. Therefore, we find that there was a reasonable probability that, had defense counsel prevented the jury from being informed of the nature of the defendant's prior felony convictions, there may have been a different result. For these reasons and based on the specific facts of this case, we find that the defendant has met his burden in showing both that counsel's performance was ineffective and that the defendant was prejudiced.

¶ 48    In applying our decision, we suggest that the trial courts (1) approve a stipulation requested by the defendant whereby the parties acknowledge that the defendant is, without further elaboration, a person who has previously been convicted of two qualifying felonies under the

19

armed habitual criminal statute;[4] (2) at the same time, allow the State to place into the record, at its discretion, the actual judgment of the two prior felony convictions relied on and to present a copy to the jury that redacts the nature of the defendant's prior convictions and limits any mention of other crimes that are irrelevant to the proceedings; (3) require the defendant, outside of the jury's presence and after consultation with counsel, to personally acknowledge the stipulation and his or her voluntary right to have the State otherwise prove beyond a reasonable doubt the convicted-felon status; (4) allow the State, outside the presence of the jury, to read into the record the name and nature of the prior felony offenses relied on and their case numbers so that the record is clear as to the qualifying felonies, and if relying on a forcible felony, the trial court must find the offense is a forcible felony as a matter of law; and (5) instruct the jury that it can consider the qualifying-convicted-felon-status element of the crime as proved by the stipulation. See *People v. Peete*, 318 Ill. App. 3d 961, 969 (2001).

¶ 49 Additionally, there is a pattern jury instruction, Illinois Pattern Jury Instructions, Criminal, No. 3.13X (approved Oct. 17, 2014) (hereinafter IPI Criminal No. 3.13X), for circumstances where, as here, an element of the charged offense is that the defendant has been previously convicted of committing a prior offense. In the present case, the defendant elected not to testify, and the court read People's instruction No. 10, based on IPI Criminal No. 3.13X, which was worded as follows:

"Ordinarily, evidence of a defendant's prior conviction of an offense may

be considered by you only as it may affect his believability as a witness and may

_____

[4]The parties should remain cognizant of the issues surrounding the definition of a "forcible felony" and those unenumerated forcible felonies that may fall under the residual clause encompassing "any other felony which involves the use or threat of physical force or violence against the individual," as such predicate felonies require further evidence for purposes of proving the charge of being an armed habitual criminal, as discussed herein.

20

not be considered by you as evidence of his guilt of the offense with which he is charged.

However, in this case, because the State must prove beyond a reasonable doubt the proposition that the defendant has previously been convicted of aggravated battery and unlawful delivery of a controlled substance, you may also consider evidence of defendant's prior convictions of the aggravated battery and unlawful delivery of a controlled substance for the purpose of determining whether the State has proved that proposition."

¶ 50    In the present case, the defendant did not testify. The use of the bracketed phrase " '[be considered by you only as it may affect his believability as a witness and must]' " in the first paragraph of the instruction and the bracketed word " '[also]' " in the second paragraph of the instruction should be used only when the defendant testifies at his trial. IPI Criminal No. 3.13X, Committee Note. Further, where the defendant does not testify at trial, IPI Criminal 3.13X should be given only at the defendant's request; otherwise, the instruction should not be given. *Id.*

¶ 51    In the present case, the State offered IPI Criminal No. 3.13X, and defense counsel had no objection to the instruction being given. Had defense counsel properly stipulated to the defendant's qualifying felon status and offered IPI Criminal No. 3.13X, a proper modification could have read:

"Ordinarily, evidence of a defendant's prior conviction of an offense may not be considered by you as evidence of his guilt of the offense with which he is charged.

However, in this case, because the State must prove beyond a reasonable doubt the proposition that the defendant has previously been convicted of *two qualifying felonies*, you may consider evidence of defendant's prior conviction of

21

*two qualifying felonies* for the purpose of determining whether the State has proved

that proposition." (Emphases added.)

¶ 52     Even though the defendant has not raised a claim that double jeopardy bars a new trial on remand, in light of our holding, we must consider whether a new trial would subject defendant to double jeopardy. See *People v. Diggins*, 235 Ill. 2d 48, 58 (2009). This case hinged on witness credibility and circumstantial evidence, and viewing the evidence in the light most favorable to the prosecution, we believe it is possible that a jury could have found that the defendant possessed the handgun. Although the evidence was closely balanced, we find that there was sufficient evidence that the jury could have found the defendant guilty beyond a reasonable doubt and therefore hold that double jeopardy does not preclude a new trial. See *id.*

¶ 53                                   B. Sentencing Double Enhancement

¶ 54     Although we remand this case for a new trial as discussed above, we briefly acknowledge the defendant's claim of sentencing error, as it is possible, if the defendant is tried again and convicted, that the issue may arise again on remand. The defendant argues, and the State concedes, that his sentence was the result of an improper double enhancement where the trial court found the defendant's prior aggravated battery conviction to be a factor in aggravation at sentencing despite the fact that the conviction was an element of the armed habitual criminal charge. A trial court may not use a factor implicit in the offense as an aggravating factor in sentencing. *People v. Phelps*, 211 Ill. 2d 1, 11 (2004). Where a factor is an element of an offense, it cannot be used as a basis for imposing a harsher sentence than might otherwise have been imposed. *People v. Gonzalez*, 151 Ill. 2d 79, 83-84 (1992).

¶ 55     As the defendant was charged with being an armed habitual criminal based on aggravated battery that caused great bodily harm, in No. 13-CF-223, and unlawful delivery of a controlled

substance, in No. 10-CF-400, neither conviction should have been used in aggravation during sentencing. However, the trial court, in pronouncing its sentence, listed "the aggravated battery" and further noted "violent crimes also called forcible felonies" as criminal history that it relied on in fashioning the defendant's sentence. The only forcible felony conviction in the defendant's criminal history as presented to the court in the presentence investigation was the aggravated battery in Jefferson County case No. 13-CF-223, which was the same conviction used as an element of the armed habitual criminal charge. If the defendant is again subject to sentencing before the trial court, the predicate felonies used to form the basis of his criminal charges should not be considered as aggravating factors at sentencing.

¶ 56                                III. CONCLUSION

¶ 57    We reverse the defendant's conviction and remand the case to the trial court for a new trial consistent with this opinion.

¶ 58    Reversed and remanded.

**No. 5-18-0192**

| | |
|---|---|
| **Cite as:** | *People v. Taylor*, 2022 IL App (5th) 180192 |
| **Decision Under Review:** | Appeal from the Circuit Court of Jefferson County, No. 16-CF-434; the Hon. Jerry E. Crisel, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Ellen J. Curry, and Jennifer M. Lassy, of State Appellate Defender's Office, of Mt. Vernon, for appellant. |
| **Attorneys for Appellee:** | Sean M. Featherstun, State's Attorney, of Mt. Vernon (Patrick Delfino, Patrick D. Daly, and Jessica L. Book, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |