**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2022 IL App (3d) 190651-U

Order filed May 3, 2022

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2022

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 21st Judicial Circuit, Kankakee County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-19-0651 Circuit No. 18-CF-361 |
| ALAN B. NOTTKE, | ) ) ) | Honorable Clark E. Erickson, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE HOLDRIDGE delivered the judgment of the court.
Justices Daugherity and Lytton concurred in the judgment.

**ORDER**

¶ 1    *Held*:  (1) The court did not err in denying the defendant's motion to suppress evidence.
(2) The defendant did not receive ineffective assistance of trial counsel.

¶ 2    The defendant, Alan B. Nottke, appeals his conviction for armed habitual criminal (AHC). The defendant argues the Kankakee County circuit court erred in denying his motion to suppress evidence and defense counsel provided ineffective assistance.

¶ 3                                    I. BACKGROUND

¶ 4        The State charged the defendant with AHC (720 ILCS 5/24-1.7 (West 2018)), aggravated unlawful use of a weapon (AUUW) (*id.* § 24-1.6(a)(2), (a)(3)(A)), and unlawful possession of methamphetamine (720 ILCS 646/60 (West 2018)). The defendant retained private counsel.

¶ 5        Counsel filed a motion to suppress evidence, arguing the police did not have probable cause to search his vehicle and seize a firearm discovered in his vehicle.

¶ 6        At the hearing on the motion, the defendant testified that on June 22, 2018, at approximately 11 p.m., while driving his vehicle, he adjusted the headlights. Trooper Reynald Peete stopped the defendant's vehicle due to driving without headlights. Peete informed the defendant that he smelled the odor of an alcoholic beverage and asked the defendant to exit his vehicle. At this time, there were two other officers on the scene. After Peete conducted standardized field sobriety tests, he told the defendant that he was going to search the vehicle. The defendant told Peete that he did not have his consent to search and that Peete was violating his rights. The defendant locked the vehicle. Officers placed the defendant in handcuffs, retrieved the keys, and searched the vehicle. Peete located a firearm in the vehicle.

¶ 7        The State entered into evidence the squad car video recording of the stop. The video shows the defendant's vehicle approach Peete's squad car from the opposite direction. The defendant's lights switch off, and the defendant continues driving. Peete turns around and follows the defendant into a parking lot. There, the audio records the defendant saying that he believed another driver flashed their lights to indicate that the defendant needed to turn his high beams off. Peete informs the defendant that he smells the odor of an alcoholic beverage emitting from the vehicle and asks if the defendant had consumed alcohol. The defendant states that he had not been drinking and explains that a beer spilled in his vehicle the day before. Peete asks if the defendant would pass standardized field sobriety tests, and the defendant replies, "Listen, whatever you want to do,

2

that's fine." The defendant asks if he has a warrant for his arrest. Peete responds that he does not know. The defendant then states, "I know my rights, I'm not an idiot," "you're being very disrespectful," and "I was trying to figure out my lights, and you're treating me like a common criminal." Peete tells the defendant to relax. The defendant continues to accuse Peete of being disrespectful. Peete asks the defendant to place his cell phone in the vehicle and informs the defendant that he is going to perform a pat-down search. The defendant responds, "Okay. No Problem. No Problem at all." Peete asks the defendant to lock his hands together, and the defendant asks if he is under arrest. Peete tells the defendant he is performing a pat-down. The defendant becomes agitated and says, "What is this for? What is this for, sir?" The defendant begins yelling for help and loudly accusing the officers of violating his rights. Peete continues to try to calm the defendant down, and again, informs the defendant that he is conducting a pat-down to ensure that the defendant does not have any weapons. Peete locates a firearm holster and asks the defendant if he has a firearm. The defendant denies possessing a firearm. Peete places the defendant in front of his squad car and in view of the video recording. Dispatch informs the officers of the defendant's prior criminal history and parole status. Following the standardized field sobriety tests, Peete tells the defendant that he is going to search the vehicle because he found a firearm holster on his person. Again, the defendant denies possessing a firearm and locks the doors of the vehicle. Peete states that the defendant locking the vehicle makes him "real nervous." The defendant continues to accuse the officers of violating his rights. Peete searches the vehicle and locates a firearm.

¶ 8     The court denied the State's motion for a directed verdict. Trooper Blake Harsy testified that he assisted Peete with a traffic stop on June 22, 2018. [1] Harsy described what occurred during

---

[1]Trooper Reynald Peete was on medical leave at the time of the motion to suppress and not available to testify.

the stop that was not visible on the squad car video. Harsy observed Peete speaking to the defendant while the defendant was sitting in his parked vehicle. Peete requested that the defendant perform standardized field sobriety tests, and the defendant closed his door and began to roll up his window. Based on Harsy's training and experience, the act of closing a door or rolling up a window can indicate that the suspect intends to drive away or refuse to exit the vehicle. These actions could also show that an individual was concerned about something in the vehicle that he wanted to keep from the officers. In response, Peete opened the defendant's driver's side door. The defendant exited the vehicle and then attempted to re-enter and sit in the vehicle. The defendant began accusing the officers of violating his rights. Peete told the defendant that he was going to perform a pat-down. Harsy observed a firearm holster on the right side of the defendant's beltline during the pat-down. When Peete touched the holster, the defendant began yelling for help. Peete asked the defendant if he had a firearm, and the defendant indicated that the holster was for a hammer. The defendant did not have a utility belt or other tools. Harsy described the holster as a Springfield Armory handgun holster made for a specific type of firearm.

¶ 9       On cross-examination, Harsy indicated that the vehicle was not blocked, and the defendant could have driven away. After discovering the empty firearm holster, both Harsy and Peete were concerned that the defendant was armed with a firearm.

¶ 10      The court denied the defendant's motion to suppress.

¶ 11      Prior to the defendant's jury trial, the State dismissed the defendant's unlawful possession of methamphetamine charge. The State proposed severing the two remaining offenses to avoid the introduction of three prior felony offenses rather than two. Defense counsel asked to have both counts heard together.

4

¶ 12    Before jury selection, the court read to the venire the defendant's charges, referencing the defendant's prior convictions as they related to the charges. Following jury selection, the State moved to admit the defendant's prior convictions for residential burglary and unlawful delivery of a controlled substance to satisfy the prior convictions requirement of AHC. The State also moved to admit the defendant's prior conviction for unlawful possession of a weapon by a felon offense (UPWF) in support of the AUUW offense. The court admitted all three offenses over defense counsel's objection. The court read the prior offenses into the record.

¶ 13    Peete's trial testimony was consistent with the squad video shown during the motion to suppress hearing and Harsy's testimony at the hearing on the motion to suppress. Peete stated he stopped the defendant's vehicle after the vehicle's headlights shut off while driving. During the stop, the defendant looked over his left shoulder toward Peete, made "furtive movements," and "manipulat[ed] something with his hands." Following a search of the defendant's vehicle, Peete located a loaded pistol between the center console and the driver's seat and a bullet in the center console. Following Peete's testimony, the State published the squad video to the jury.

¶ 14    Lieutenant Christopher Kidwell testified that in an interview with the defendant, the defendant stated that he owned the firearm located in the vehicle.

¶ 15    Counsel moved for a directed finding and argued that count II, AUUW, is facially unconstitutional and both counts I and II should be dismissed. The State agreed to dismiss count II.

¶ 16    During the jury instruction conference, the State proposed instructing the jury to only consider the defendant's prior convictions for the purpose of determining whether the State had satisfied the prior convictions element of the AHC charge. Defense counsel objected to the entire instruction. The court granted the defendant's objection, noting that the instruction should only be

5

given at the defendant's request. Regarding the dismissed AUUW charge, the court did not instruct the jury to disregard the prior conviction for UPWF.

¶ 17      The jury found the defendant guilty of AHC. The court sentenced the defendant to nine years' imprisonment. The defendant appeals.

¶ 18                                    II. ANALYSIS

¶ 19                                 A. Motion to Suppress

¶ 20      The defendant argues the circuit court erred in denying his motion to suppress evidence. Specifically, the evidence did not show that Peete had a reasonable suspicion that the defendant was armed and dangerous at the time of the pat-down.

¶ 21      We apply a two-part standard when reviewing a court's ruling on a motion to suppress evidence. *People v. Grant*, 2013 IL 112734, ¶ 12. We will uphold the court's factual findings unless they are against the manifest weight of the evidence. *People v. Luedemann*, 222 Ill. 2d 530, 542 (2006). We review the ultimate legal question of whether suppression of evidence is warranted *de novo*. *Id.*

¶ 22      The federal and state constitutions protect citizens from unreasonable searches and seizures. U.S. Const., amend. IV; Ill. Const. 1970, art. I, § 6. Vehicle stops are subject to the fourth amendment's reasonableness requirement and are analyzed under the principles outlined in *Terry v. Ohio*, 392 U.S. 1, 21-22 (1968). Under *Terry*, a police officer may conduct a brief, investigatory traffic stop when the officer has reasonable articulable suspicion to believe "that the person has committed, or is about to, commit a crime." *People v. Close*, 238 Ill. 2d 497, 505 (2010). A pat-down search is limited to instances where "an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or others, the officer may conduct a pat-down search to determine whether the person

6

is in fact carrying a weapon." *People v. Sorenson*, 196 Ill. 2d 425, 432 (2001). *Terry* extends to protective searches of the passenger compartment during an investigatory stop when an officer possesses "a reasonable belief, based on specific and articulable facts and reasonable inferences from those facts, that the individual was dangerous and could gain control of a weapon." *People v. Colyar*, 2013 IL 111835, ¶ 39.

> "The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger. [Citation.] In determining whether the officer acted reasonably in such circumstances, due weight must be given to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience." *Sorenson*, 196 Ill. 2d at 433.

¶ 23    The sole justification for a pat-down search is to ensure the safety of the officers and others nearby and not to gather evidence. *Id.* at 432. Therefore, "[i]f the protective search goes beyond what is necessary to determine if a suspect is armed, it is no longer valid under *Terry* and its fruits will be suppressed." *Id.* "[C]ourts reviewing the propriety of *** [*Terry*] stops must decide each case on its own unique facts." *Colyar*, 2013 IL 111835, ¶ 37 (citing *Terry*, 392 U.S. at 30-31).

¶ 24    In the present case, the record shows that Peete asked the defendant to exit the vehicle after smelling the odor of an alcoholic beverage. The defendant began rolling up his window and closing his door. Based on Harsy's training and experience, the defendant's actions indicated that he may refuse to exit his vehicle, intend to flee, or be concerned about something inside the vehicle. When the defendant exited his vehicle, he became agitated, and, consistent with Harsy's experience, the defendant attempted to re-enter his vehicle. When officers were able to secure the defendant's presence outside of the vehicle, Peete informed the defendant that he would conduct a pat-down.

7

The defendant escalated his behavior and began yelling for help. The defendant continued his excited behavior while Peete attempted to de-escalate the situation. The totality of the facts, including the nature and proximity of standardized field sobriety tests, the defendant's evasive behavior in attempting to close the door to his vehicle prior to exiting and return to his vehicle after exiting, and the defendant's sudden agitation upon exiting the vehicle and increasing escalation would lead a reasonably prudent person in similar circumstances to believe a pat-down was necessary to determine whether the defendant possessed a weapon and ensure officer safety. See *Sorenson*, 196 Ill. 2d at 433-34.

¶ 25      Once Peete located the firearm holster on the defendant's waist and learned of the defendant's parole status, Peete had reasonable suspicion to believe that the defendant unlawfully possessed a firearm in the vehicle and could gain control over the weapon. See *Colyar*, 2013 IL 111835, ¶¶ 38-39. Moreover, the defendant's continued evasive behavior and act of locking the vehicle furthered the officers' reasonable suspicion that a firearm may be present in the vehicle. Under these circumstances, Peete acted on a reasonable fear for his and Harsy's safety when he searched the passenger compartment of the defendant's vehicle and located a firearm between the center console and the driver's seat and a bullet in the center console. See *id.* ¶ 48. Therefore, the court properly admitted the firearm, bullet, and the defendant's admission that he owned the firearm at trial.

¶ 26                                    B. Ineffective Assistance of Counsel

¶ 27      The defendant argues that counsel provided ineffective assistance when he failed to stipulate that the defendant's prior felony residential burglary and unlawful delivery of a controlled substance convictions qualified as an element required under the AHC statute, failed to move to

8

dismiss the defendant's AUUW offense prior to trial, and failed to stipulate to the defendant's UPWF offense that the State sought to admit for the AUUW charge.

¶ 28    To prevail on a claim of ineffective assistance of counsel, a defendant must show: (1) counsel's performance fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different. *Strickland v. Washington*, 466 U.S. 668, 694 (1984). " 'Matters of trial strategy are generally immune from claims of ineffective assistance of counsel.' " *People v. Manning*, 241 Ill. 2d 319, 327 (2011) (quoting *People v. Smith*, 195 Ill. 2d 179, 188 (2000)).

¶ 29    From our review of the record, counsel performed deficiently when he failed to stipulate to the defendant's prior felony convictions, causing the convictions to be read into the record, and failed to move to dismiss the defendant's AUUW offense prior to trial causing the jury to unnecessarily hear evidence of a second offense and the defendant's prior conviction for UPWF. See *People v. Moore*, 2020 IL 124538, ¶ 41 (defense counsel performed deficiently when he failed to stipulate to the defendant's felony status). While defense counsel objected to the admission of the defendant's UPWF offense, he failed to mitigate the risk of unfair prejudice by stipulating to the offense or moving to dismiss the AUUW offense prior to trial. Counsel also acted deficiently when he rejected severing the two counts and objected to the limiting jury instruction which would have instructed the jury to limit its consideration of the defendant's prior convictions only for the purpose of whether the State proved that element of the offense. See Illinois Pattern Jury Instructions, Criminal, No. 3.13X (approved Oct. 17, 2014). These actions are objectively unreasonable where the State was not required to prove the defendant's prior felony conviction as an element of the offense and the AUUW statute was held unconstitutional. See *People v. Aguilar*, 2013 IL 112116, ¶ 22.

9

¶ 30    Despite counsel's deficient performance, the defendant has not and cannot show prejudice. Here, excluding the evidence of the defendant's prior offenses would not have changed the result of the trial. To prove the defendant guilty of AHC, the State needed to establish that the defendant possessed a firearm "after having been convicted a total of 2 or more times of any combination" of felony offenses specified in the statute, including

"(1) a forcible felony ***;

(2) unlawful use of a weapon by a felon; [AUUW]; aggravated discharge of a firearm; vehicular hijacking; aggravated vehicular hijacking; aggravated battery of a child ***; intimidation; aggravated intimidation; gunrunning; home invasion; or aggravated battery with a firearm ***;

(3) any violation of the Illinois Controlled Substances Act or the Cannabis Control Act that is punishable as a Class 3 felony or higher." 720 ILCS 5/24-1.7(a)(1), (a)(2), (a)(3) (West 2018).

The trial evidence clearly established that the defendant possessed a firearm in his vehicle. Peete testified that he located a firearm between the driver's seat and center console of the vehicle. The defendant also admitted in an interview that he owned the firearm Peete discovered. Further, the evidence of the defendant's prior AHC qualifying offenses was clearly presented. The State admitted the defendant's prior convictions for unlawful delivery of a controlled substance and residential burglary, both qualifying prior offenses under the statute. See *id.* § 24-1.7(a)(1), (a)(3). The nature of an AHC charge, which only results from the commission of several prior felony offenses, always requires some evidence of a defendant's prior offenses. Therefore, the erroneous admission of evidence of the defendant's AUUW and UPWF offenses caused little, to no, prejudice where the statute necessarily requires some evidence of similar prior convictions.

Accordingly, the defendant cannot demonstrate that he received ineffective assistance of counsel. See *Strickland*, 466 U.S. at 694.

¶ 31                                      III. CONCLUSION

¶ 32          The judgment of the circuit court of Kankakee County is affirmed.

¶ 33          Affirmed.