2022 IL App (2d) 210080
No. 2-21-0080
Opinion filed October 17, 2022

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Boone County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 18-CF-01 |
| CHRISTOPHER G. TOLLIVER, | ) ) ) | Honorable John H. Young, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE JORGENSEN delivered the judgment of the court, with opinion.
Presiding Justice Brennan and Justice Schostok concurred in the judgment and opinion.

**OPINION**

¶ 1    Defendant, Christopher G. Tolliver, appeals his conviction of and sentence for the offenses of armed habitual criminal (720 ILCS 5/24-1.7 (West 2018)), operating an uninsured vehicle (625 ILCS 5/3-707(a) (West 2018)), driving while license revoked (625 ILCS 5/6-303 (West 2018)), and obstructed registration (625 ILCS 5/3-413(b) (West 2018)). For the following reasons, we agree that, where defendant was willing to stipulate to the two prior convictions that qualified him to be charged as an armed habitual criminal, the trial court erred in admitting evidence of the names of those convictions. We reverse and remand.

¶ 2                                I. BACKGROUND

¶ 3    On January 2, 2018, police found a firearm in a sport utility vehicle (SUV) that defendant had been driving. In sum, the attention of City of Belvidere police officer Zachary Reese was drawn to an illegible temporary rear registration plate on the SUV and, after defendant exited the SUV in a parking lot, Reese asked defendant for his driver's license and registration. Defendant had neither, and, when his information was processed, Reese learned that defendant's license was revoked. Defendant was arrested, a K-9 sniff was performed, the SUV was searched, and a firearm and drug residue were found inside the vehicle.

¶ 4                              A. Motion to Suppress

¶ 5    On April 5, 2019, defendant moved to suppress evidence, arguing in his written motion that the police officers lacked requisite probable cause for the stop and arrest and that the detention was illegally prolonged.

¶ 6    At the hearing on the suppression motion, Reese testified that, on January 2, 2018, at approximately 10 p.m., he was traveling westbound on Newburg Road in Belvidere when he observed an SUV traveling eastbound with no front license plate. As the SUV passed him, he did not see a rear plate either. He turned around, and, when he got closer to the vehicle, he was able to see that the SUV had a temporary rear registration plate (there is no requirement for a front temporary plate). Reese attempted to read the plate number and enter it into his mobile data terminal. He testified that "it took me a few tries to get the numbers correct." Reese conceded that he did not later write in his four-page narrative report that it took him multiple attempts of entering number variations before a valid registration was returned. He explained that it was "an independent recollection from the night."

¶ 7    While he was running the plate numbers, Reese observed the SUV make a U-turn on the side of the road to return toward the area of Newton and Appleton Roads. Reese also made a U-

turn, and he saw the SUV pull into a gas station. Reese pulled across the street from the gas station to wait for the vehicle to return onto the roadway. He observed that the SUV's driver, later determined to be defendant, had parked to the right side of the gas pumps; defendant did not exit the vehicle, no one approached the vehicle, and he could not see whether defendant made a phone call from inside the vehicle. Reese continued to sit stationed across the street as he ran the registration; he was waiting for the return on it and for the SUV to pull onto the roadway. As defendant was leaving the gas station and beginning to pull onto the roadway, the registration returned for the plate, showing that it was registered out of Rockford and to a female. Defendant, after having parked at the gas station for around five minutes, pulled the SUV out onto the roadway and then immediately into the parking lot of the Waterfall Bar and Grille (Waterfall Bar) next door. Reese testified that he drove to the bar's parking lot to conduct a traffic stop for the SUV's illegible rear plate. However, defendant exited the vehicle and went into the bar for approximately three to five minutes. Reese waited in the parking lot and placed a call to dispatch that he would be investigating a suspicious vehicle at the Waterfall Bar.

¶ 8    Reese was asked what suspicious activity prompted the stop and why, when defendant left the gas station and Reese had obtained a valid registration for the SUV, he did not let defendant keep driving away, he responded, "[b]ased off of the behavior, the suspicion that I was observing that something wasn't right, no." Reese explained that the suspicious behavior was that defendant saw Reese behind him, did a U-turn, and pulled into a gas station but did not get out of the car and then sat there for a little bit; further, when defendant went to leave, he "saw me sitting across the way" and stopped, pulled out, and then quickly went into the Waterfall Bar parking lot and stayed there. This sequence of events was not recorded on Reese's dash camera because he had not yet conducted a traffic stop.

¶ 9 Reese confirmed that his attention was initially drawn to the SUV because of the license plate. The State introduced into evidence two photographs of the SUV's rear temporary plate, one taken around 10 feet away from the plate (People's exhibit No. 1) and the other taken "right up behind" the plate (People's exhibit No. 2). Reese testified that they accurately depicted the rear plate as he saw it on January 2, 2018. He could not initially see the information depicted in People's exhibit No. 2 from inside his squad car, and it took him a couple of attempts to obtain the correct temporary plate number. When he entered an incorrect plate number, the system either returned a different vehicle match or said that there was no record. It took time for him to get a match to the SUV and, when he did, it was registered to a female. Reese confirmed that when he approached defendant in the Waterfall Bar's parking lot, he had not activated his lights. In fact, defendant was already stopped of his own volition. Based upon the illegible temporary rear registration plate, Reese wrote a ticket for obstructed registration.

¶ 10 At the hearing, defendant's counsel argued and introduced evidence concerning whether there was sufficient evidence of criminal activity to justify the stop, but he did not argue that the stop was unduly prolonged. On June 17, 2020, the trial court denied defendant's motion to suppress. In a written memorandum decision, the court noted that section 3-413(b) of the Illinois Vehicle Code (Code) (625 ILCS 5/3-413(b) (West 2018)) provides that every vehicle registration plate must be maintained in a condition to be "clearly legible." The court found that the State's exhibits of the temporary registration plate on the SUV "clearly show the condition of the plate was not clearly legible." Although Reese knew, prior to any contact with defendant, that the registration plate had returned valid, he testified that it took him a few tries to get the numbers correct when running the plate. "Even though the officer was able to ultimately read the registration plate numbers, [that] does not mean the registration plate condition was clearly legible. It was not.

This is sufficient probable cause to effectuate a traffic stop." The court further found that defendant was stopped of his own volition and that Reese never activated his lights or siren prior to the contact. As such, the court found that the facts did not present a "classic 'effectuated a traffic stop' situation." Rather, as noted in defendant's motion, defendant was outside of the vehicle and, at that time, Reese approached him. Finally, the court noted that, while the motion alleged that the seizure was prolonged, that issue was not raised or argued during the hearing. Thus, the court expressed no opinion as to when the seizure began or if it was prolonged.

¶ 11                                   B. Motion *in Limine*

¶ 12    Prior to trial, the State moved *in limine* to introduce evidence of defendant's 2012 conviction of home invasion (720 ILCS 5/19-6(a)(2) (West 2012)) and his 2008 conviction of a violation of the Illinois Controlled Substances Act (720 ILCS 570/100 *et seq.* (West 2008)). The State noted that the convictions were essential elements of the offense of armed habitual criminal and, therefore, that it should be allowed to introduce evidence of those convictions in its case-in-chief. No written response from defendant to the motion appears in the record. Further, in a footnote in his appellate brief, defendant notes that the common law record reflects that, on August 14, 2020, the court heard argument on the State's motion and his objections thereto but that "neither a transcript of the proceeding nor stenographic notes were ever created."

¶ 13    On September 2, 2020, the court granted the State's motion. It explained that the armed habitual criminal statute (720 ILCS 5/24-1.7 (West 2018)) has as an element that the defendant was convicted of two or more specified offenses. The court noted that *People v. Davis*, 405 Ill. App. 3d 585 (2010), supported the State's position that it must prove more than that defendant had a prior felony conviction; rather, it must prove that defendant had two or more "specific qualifying" felony convictions. According to the court, although defendant had offered to "stipulate to the prior

convictions and that the State ha[d] proven those elements of the indictment, the State had refused to so stipulate." The court found that it "cannot and may not force either party to stipulate to any element of an offense."

¶ 14    On that same date, the parties appeared in court for decision on the State's motion and for status. The court explained that it had issued its written decision granting the State's motion over defendant's objection. The State expressed that it wished to clarify its position with respect to the court's ruling on the motion.

> "The State is certainly not objecting to a stipulation that he has these particular prior offenses, but it's my understanding defense counsel doesn't want the prior offenses themselves read. So what I'm saying is I don't believe the State can stipulate that the jury can find or that we don't even have to let the jury find that because they've already—the counsel's already said it's happened. I think the jury still has to find each and every element, stipulate to the facts that support that element, but that fact would have to be that he has these *particular* offenses. So, I'm just clarifying." (Emphasis added.)

The court responded it understood that the State would stipulate that defendant had specific convictions but wanted to read those to the jury because they had to be proven, while defendant would stipulate but did not want them read to the jury. "[Y]ou're [(*i.e.*, the State is)] not saying that you can stipulate and not have that brought in front of the jury." Defendant did not interject any further clarification of his position. The court agreed with the State.

¶ 15                                    C. Trial and Sentence

¶ 16    Trial commenced on September 24, 2020. Reese's testimony at trial was overall consistent with his testimony from the suppression hearing. In addition, the temporary registration plate photographs that had been used at the suppression hearing were again introduced and published to

the jury. Reese further explained that, when defendant exited the Waterfall Bar, he walked to the passenger side of the SUV, opened the front passenger door, and started going through the center console. Reese testified that he saw defendant use a cell phone light to illuminate the console. At that point, Reese had parked his squad car. He exited the car and approached defendant, who backed away from the SUV and stood at the back of the bar. Although his car was unmarked, Reese was dressed in full uniform, identified himself to defendant as a police officer, and told defendant that "he was on a traffic stop." Reese clarified that the stop was for "having a license plate that was not clearly legible and maintained in a clear manner." When Reese asked to whom the vehicle belonged, defendant responded that it was his girlfriend's. Reese asked defendant for his license and identification, and defendant responded that he did not have identification on him. Two more police officers arrived, and defendant provided Reese with his name and date of birth. When Reese ran the information, he learned that defendant's driver's license was revoked. Reese asked for the vehicle's insurance card, but defendant did not provide it. Reese placed defendant in custody for driving on a revoked license. After defendant was in custody, another officer arrived and conducted a K-9 free air sniff of the SUV. The dog alerted, the officer searched the vehicle, and he found a firearm located in the SUV's center console. Other than to confirm that the weapon was operable, no forensic testing was performed.

¶ 17     At trial, in front of the jury, the State introduced certified copies of defendant's convictions of home invasion and a violation of the Controlled Substances Act. Defendant again asserted his position that the only information that the jury should receive was that the felony offenses qualified to charge him as an armed habitual criminal. The court considered defendant's comment a renewed objection to its earlier ruling that defendant could not just stipulate that the offenses qualified but, rather, that the State had to prove the offenses as an element of the charged offense. The court

admitted the certified documents into evidence but did not allow publication to the jury. Defendant's motion for a directed verdict at the close of the State's case was denied, and his motion for a mistrial was also denied. The defense rested. The State referenced defendants' prior convictions by name in closing argument. In addition, three separate jury instructions referenced home invasion and a "Class 1 Felony Violation of the Controlled Substances Act."

¶ 18    During its deliberations, the jury asked the court questions about the definition of armed habitual criminal and, at one point, indicated that it was deadlocked. The court instructed the jury that it had received all necessary instructions and to continue deliberations. Ultimately, the jury found defendant guilty of all offenses.

¶ 19    The court denied defendant's motion for an acquittal or, alternatively, a new trial. At the sentencing hearing, the court acknowledged that defendant had filed a *pro se* motion to reconsider and a motion to amend or file subsequent posttrial motions, but the court ultimately denied the motions and sentenced defendant to 20 years' imprisonment. Defendant moved the court to reconsider the sentence and filed a *pro se* motion for a directed finding, which the court also denied. Defendant appeals.

¶ 20                                    II. ANALYSIS

¶ 21                                A. Motion to Suppress

¶ 22    On appeal, defendant contends first that the trial court erred in denying his motion to suppress. He argues that the trial court wrongly credited Reese's testimony that he was unable to clearly read the vehicle's plate, because the fact that Reese was able to enter the correct seven-digit plate number plainly showed that the plate was clearly legible: "[a] plate cannot be illegible if the officer was plainly capable of entering the correct [seven] digits into his system." Defendant further argues that Reese's independent recollection, more than two years after the stop occurred,

that he had to enter the numbers multiple times before finding a valid plate number is not credible, as he made no mention of those multiple attempts or deviations in his four-page narrative police report. In addition, defendant notes that, once a valid registration returned, it dispelled any basis to seize him for a purportedly illegible plate. Instead, at that point, while defendant was at the gas station and before the traffic stop at the bar, Reese had confirmed both the legibility and validity of the plate. He had no specific articulable facts that illegal activity occurred or basis to effectuate a traffic stop. Defendant requests that we reverse and instruct the trial court to suppress the handgun and the ensuing information (*i.e.*, that defendant did not have a valid driver's license and insurance) as fruits of an illegal seizure. For the following reasons, we reject defendant's arguments.

¶ 23    When reviewing a trial court's ruling on a motion to suppress evidence, we apply a two-part standard of review, reversing a court's factual findings only if they are against the manifest weight of the evidence, but reviewing *de novo* the court's ultimate legal ruling on whether to suppress the evidence. *People v. Almond*, 2015 IL 113817, ¶ 55. In doing so, we may consider evidence presented at defendant's trial, as well as at the suppression hearing. *Id.* Moreover, we also review *de novo* whether Reese had reasonable suspicion for a stop and probable cause to arrest. *People v. Rush*, 319 Ill. App. 3d 34, 38-39 (2001).

¶ 24    The State argues first that we should find that Reese's encounter with defendant was not a stop but a consensual encounter. We agree. "Both the fourth amendment to the United States Constitution and article I, section 6, of the Illinois Constitution of 1970 guarantee the right of individuals to be free from unreasonable searches and seizures." *People v. Sims*, 2022 IL App (2d) 200391, ¶ 73; see also U.S. Const., amend. IV; Ill. Const. 1970, art. I, § 6. However, "not every encounter between a police officer and a private citizen involves a seizure or restraint of liberty

that implicates the fourth amendment." *Almond*, 2015 IL 113817, ¶ 56. Rather, "a consensual encounter between a citizen and an officer does not violate the fourth amendment because it does not involve coercion or a detention." *Id.*

¶ 25    Here, the court found that defendant was stopped of his own volition before being approached by Reese and that this case was not a classic "effectuated a traffic stop" situation. Those findings were not against the manifest weight of the evidence. Indeed, the record reflects that Reese approached defendant on foot, *after* defendant had already parked and exited his vehicle. Further, Reese drove an unmarked vehicle and did not activate his vehicle's lights or sirens. Although he wore a uniform and announced that "he was on a traffic stop," when Reese first approached defendant after defendant exited the Waterfall Bar, he was alone and he did not display his weapon, nor did he physically touch defendant or use any other means of physical force or show of authority to restrain defendant's movement. See, *e.g.*, *id.* (noting that, when considering whether a challenged incident was a consensual encounter or a seizure, the absence of any factors such as the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person, or using language or tone compelling the individual to comply with the officer's request, is highly instructive on the issue of whether a seizure occurred (citing *United States v. Mendenhall*, 446 U.S. 544, 553-54 (1980)). We agree with the State that, here, defendant's encounter with Reese was initially consensual, as opposed to a seizure. As such, defendant was not seized until Reese learned, *during* the consensual encounter, that defendant's license was revoked and arrested him. At that point, additional officers had arrived on scene, but Reese also had new facts giving rise to probable cause for the arrest, as Reese had observed defendant driving with a revoked license and defendant was unable to provide proof of insurance. Therefore, we reject defendant's argument that his motion to suppress should have been granted.

¶ 26    We note that we also agree with the State's alternative argument that, even if defendant was seized prior to his arrest, the stop was lawful. Stopping a vehicle is generally reasonable both if the police have probable cause to believe that a traffic violation has occurred or under the reasonable-and-articulable suspicion standard announced in *Terry v. Ohio*, 392 U.S. 1 (1968); *People v. Patel*, 2020 IL App (4th) 190917, ¶ 15. "[P]robable cause exists when the arresting officer is aware of facts and circumstances that would lead a reasonably cautious person to conclude that the defendant committed a crime." *City of Highland Park v. Kane*, 2013 IL App (2d) 120788, ¶ 10; see also 725 ILCS 5/107-14 (West 2018) (temporary questioning without an arrest is permissible; "A peace officer, after having identified himself as a peace officer, may stop any person in a public place for a reasonable period of time when the officer reasonably infers from the circumstances that the person is committing, is about to commit or has committed an offense as defined in Section 102-15 of this Code, and may demand the name and address of the person and an explanation of his actions. Such detention and temporary questioning will be conducted in the vicinity of where the person was stopped."). Moreover, commission of a traffic offense provides probable cause to stop a vehicle. *Kane*, 2013 IL App (2d) 120788, ¶ 10. Violation of a traffic law, even if minor, provides probable cause to stop a vehicle. *Patel*, 2020 IL App (4th) 190917, ¶ 15; see also *People v. Maberry*, 2015 IL App (2d) 150341, ¶ 10. Reasonable suspicion is a less demanding standard than probable cause and, under this standard, police may stop a vehicle "based on reasonable suspicion—articulable, specific facts (and the rational inferences therefrom)—that suggest a crime has been or is about to be committed." *Patel*, 2020 IL App (4th) 190917, ¶ 15.

¶ 27    Here, Officer Reese had probable cause to conclude that defendant was in violation of section 3-413(b) of the Code. Specifically, the Code provides,

"Except for vehicles with rear loaded motorized forklifts, every registration plate shall at all times be *** in a place and position to be clearly visible and shall be maintained in a condition to be *clearly legible*, free from any materials that would obstruct the visibility of the plate." (Emphasis added.) 625 ILCS 5/3-413(b) (West 2018).

¶ 28    Despite defendant's argument to the contrary, and as the trial court found, the fact that Reese ultimately located the vehicle in the registration database does not mean that the plate was clearly legible. Further, even setting aside Reese's testimony that it took several attempts to locate the vehicle in the database, the photographs of the rear temporary plate—which this court has reviewed—were themselves sufficient to support the trial court's finding that the plates were not clearly legible and, thus, violated the Code. Defendant's cited cases from foreign jurisdictions are both not binding and distinguishable. See, *e.g.*, *United States v. McSwain*, 29 F.3d 558 (10th Cir. 1994) (officer in Utah believed that a temporary registration sticker was improperly covered with reflective tape but, upon approach, discovered that the tape was officially used by the State of Colorado to protect the sticker and the sticker was valid); *People v. Redinger*, 906 P.2d 81 (Colo. 1995) (officer initially believed that there was no license plate or temporary sticker but, upon approach, discovered that there was a valid temporary registration plate properly displayed). Here, Reese believed that the plate was not clearly legible and, upon approach, *confirmed* that it was not clearly legible. In short, the trial court's finding, based upon the photographic exhibits in evidence and Reese's testimony, that the rear registration plate was not clearly legible was not against the manifest weight of the evidence. As such, Reese's stop was lawful, and the court did not err in denying defendant's motion to suppress evidence.

¶ 29                            B. Prolonged Stop

¶ 30    Defendant argues next that, even if Reese had cause to effectuate a seizure, the stop was illegally prolonged to search the vehicle. He notes that the sole mission of the traffic stop was to issue a ticket for the rear plate not being clearly legible and, when Reese learned that defendant did not have a valid driver's license, he was put in custody. At that time, defendant contends, Reese had completed the task tied to the stop's mission, as defendant was in custody and the vehicle was lawfully parked in the bar's parking lot. Yet, rather than conclude the investigation, officers prolonged the stop by conducting a K-9 sniff, which defendant asserts was unconstitutional because the traffic stop was already over. Defendant concludes that the K-9 sniff illegally prolonged the stop, the search of the vehicle and seizure of the firearm are illegal fruits of the K-9's alert, and, therefore, we should reverse and instruct the trial court to suppress the firearm and the ensuing information.

¶ 31    The State argues that defendant has forfeited this argument. We agree. Although defendant raised the issue of a prolonged detention in his written motion to suppress, he did not present any argument on that issue before the trial court at the suppression hearing or at trial, nor did he raise the issue in a posttrial motion. See, *e.g.*, *Almond*, 2015 IL 113817, ¶ 54 (to preserve an issue for review, a party must raise it both at trial and in a written posttrial motion). Moreover, although we may review forfeited errors for plain error, defendant has not requested that we do so and presents no argument on how plain error was demonstrated here; therefore, defendant has also forfeited plain-error review. See, *e.g.*, *People v. Hillier*, 237 Ill. 2d 539, 545-46 (2010).

¶ 32                    C. Defendant's Prior Convictions

¶ 33    Next, defendant argues that the trial court erred when it granted the State's motion *in limine* to admit the name and nature of his prior convictions, specifically, his convictions of home invasion and a violation of the Controlled Substances Act. Defendant asserts that, where he wished

to stipulate that he was "simply previously convicted of two prior qualifying offenses," the court incorrectly determined that it could not force the State to accept that stipulation. He argues that the court wrongly relied on *Davis*, because the issue there concerned a due process challenge to the armed habitual criminal statute. Rather, defendant argues, more instructive here is *People v. Walker*, 211 Ill. 2d 317, 341 (2004), which held that the trial court erred when it allowed introduction of the name and nature of a felony conviction, when the prosecution could instead have met its evidentiary obligation of proving felon status by accepting a defendant's stipulation and where doing so would have avoided undue prejudice. Defendant likewise contends that the court here mistakenly found that it could not force the State to accept his stipulation and, therefore, revealing the name and nature of his prior convictions was prejudicial and cannot be viewed as harmless error. Defendant requests that we reverse and remand for a new trial.

¶ 34    "Generally, evidentiary motions, such as motions *in limine*, are directed to the trial court's discretion, and reviewing courts will not disturb a trial court's evidentiary ruling absent an abuse of discretion." *People v. Harvey*, 211 Ill. 2d 368, 392 (2004). "An abuse of discretion will be found only where the trial court's ruling is arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the trial court." *People v. Hall*, 195 Ill. 2d 1, 20 (2000).

¶ 35    In relevant part, the armed habitual criminal statute provides that a person commits the offense if he or she possesses "any firearm after having been convicted a total of 2 or more times of any combination of the *following offenses*." (Emphasis added.) 720 ILCS 5/24-1.7 (West 2018). It then lists several offenses, including "home invasion" and "any violation of the Illinois Controlled Substances Act." *Id.*

¶ 36    While defendant is correct that the court in *Davis* considered the statute under the framework of a due-process challenge to the statute, it remains instructive because the court's

analysis reiterated that the statute makes prior convictions of certain offenses elements of the offense. *Davis*, 405 Ill. App. 3d at 591. The court noted that, notwithstanding the recognized risk of prejudice, courts have upheld statutes that place prior convictions before a jury, and it distinguished *Walker*, which defendant relies upon here, because the statute at issue there did not require proof of a specific felony conviction. *Id.* at 592, 594. Specifically, *Walker* addressed possession of a weapon by a felon and held that, where the defendant was willing to stipulate to the fact of his prior conviction, the trial court abused its discretion by informing the jury of the name and nature of the conviction and admitting the record of conviction. *Walker*, 211 Ill. 2d at 341. The court in *Walker* disagreed that its holding deprived the State of its obligation and entitlement to prove each element of the crime, because the evidentiary significance of the record of conviction is indistinguishable from that of the stipulation, "except that one creates a substantial risk of prejudice and the other does not." *Id.* at 338-39. The court in *Walker* expressed that its holding was "a very narrow one" and that it was holding only that, "where the prosecution's sole purpose for introducing evidence of a defendant's prior felony conviction is to prove his status as a convicted felon and the defendant offers to stipulate to this element, the probative value of the name and nature of the prior conviction is outweighed by the risk of unfair prejudice and, thus, should be excluded." *Id.* at 341. It also acknowledged that possession of a weapon by a felon does not require proof of a *specific* felony conviction. *Id.* at 337. In contrast, however, and as the court in *Davis* explained, armed habitual criminal differs because

> "the legislature has determined that offenders who have been convicted of certain specified offenses shall be prevented from possessing or using a gun. Thus, in contrast to those cases [(*i.e.*, *Walker*)], it is insufficient under the statute at hand for the State to prove that the

defendant had a prior felony; rather, the State must prove that defendant had two or more *specific qualifying* felonies." (Emphasis added.) *Davis*, 405 Ill. App. 3d at 594. Further, the statute does not violate the principle that evidence of other crimes is inadmissible to establish only propensity to commit crime; rather, under the armed habitual criminal statute, evidence of other crimes *is* admissible as relevant for the purpose of satisfying the elements of the offense. *Id.* at 595.

¶ 37    More recent case law is also instructive. Specifically, in a decision following *Walker*, the supreme court, in *People v. Moore*, 2020 IL 124538, held that a defendant established ineffective assistance of counsel where the defendant was charged with unlawful possession of a weapon by a felon, his attorney failed to stipulate to the defendant's felon status, and the prior felony conviction was of murder. *Id.* ¶ 1. The court agreed that the nature of the defendant's prior conviction was not relevant to proving his felon status, summarized its holding in *Walker* and other authority regarding the risk of undue prejudice from allowing a defendant's prior crimes to be introduced to a jury, and noted that, after the *Walker* decision, Illinois Rule of Evidence 403 (eff. Jan. 1, 2011) was adopted, allowing relevant evidence to be excluded where its probative value is substantially outweighed by the danger of unfair prejudice. *Moore*, 2020 IL 124538, ¶¶ 32-39, 45. The court concluded that it could not think of a reasonable trial strategy for defense counsel not stipulating that the defendant had a prior conviction of an unspecified felony and instead relying on the misapprehension of law that disclosing the nature of the prior felony conviction was required. The court also noted that, if counsel had offered to stipulate to the defendant's prior conviction, the trial court "would have been obligated to accept the stipulation." *Id.* ¶¶ 40-41. Further, the court agreed with the defendant that, given the closeness of the case (a credibility contest between a police officer and the defendant and his witness), the specter of his murder

conviction and its inherently prejudicial nature reflected a reasonable probability that, but for counsel's deficient performance, the result of the proceedings would have been different. *Id.* ¶¶ 42-52.

¶ 38    As the State notes, although both *Walker* and *Moore* involved the offense of unlawful possession of a weapon, the Fifth District recently applied the rationale of those decisions in an armed habitual criminal case. *People v. Taylor*, 2022 IL App (5th) 180192. There, the defendant claimed ineffective assistance of counsel, where counsel did not offer to stipulate to the defendant's felon status under the armed habitual criminal statute. The court noted that *Walker* and *Moore* both held that, where the State's sole purpose for introducing evidence of prior felony convictions is to prove a defendant's status as a convicted felon but a defendant also offers to stipulate to that element, the probative value of the name and nature of the prior conviction is outweighed by the risk of unfair prejudice and it should be excluded. *Id.* ¶ 37. Recognizing that *Walker* and *Moore* involved only proving a defendant's status as a felon, the court held, "we believe that the same analysis holds true for the proof of predicate felonies under the armed habitual criminal statute." *Id.* Although the court agreed with the State that (1) it must prove *specific* enumerated offenses as an element of armed habitual criminal and, accordingly, a broad stipulation that the defendant was simply a felon would have been fruitless (*id.* ¶¶ 35, 38), and (2) there would have been no benefit to the defendant if he had stipulated to the convictions themselves, because, in that situation, the jury would still have been made aware that those convictions existed (*id.* ¶¶ 36, 38), the court nevertheless cited a string of unpublished decisions reflecting examples of a "third alternative." Specifically, it noted that a defendant could avoid the prejudicial effect of the jury hearing the name and nature of his or her prior felony convictions by stipulating that he or she had "previously been convicted of two offenses that were qualifying

offenses under the armed habitual criminal statute." *Id.* The court noted that, like in *Walker*, the evidentiary significance of the predicate convictions is the same as a stipulation except that one creates a risk of prejudice and the other does not. *Id.* ¶ 39. Further, the court noted that defense counsel seemed to be operating under a misapprehension of the law and that, like in *Moore*, if defense counsel had offered to stipulate to the defendant's prior conviction, "the trial court would have been obligated to accept the stipulation." (Internal quotation marks omitted.) *Id.* Thus, after further analysis, the court found ineffective assistance of counsel, and it offered suggestions for how trial courts should handle future stipulations and relevant jury instructions. *Id.* ¶¶ 47-49.

¶ 39      The State urges that *Taylor* was wrongly decided, asserting that a stipulation to prior felony convictions without any reference to what those felonies were could undoubtedly prejudice a defendant because the jury could be left wondering what kinds of felonies the defendant committed in the past and, in fact, could speculate that the prior offenses were worse than those currently charged. Yet, that same risk is present when a defendant stipulates that he or she is a felon for purposes of unlawful possession of a firearm by a felon, which the supreme court has approved in *Moore* and *Walker*. The State also suggests that the court in *People v. Nottke*, 2022 IL App (3d) 190651-U, implicitly rejected *Taylor*, because, although it found defense counsel's performance deficient where he had failed to stipulate that the defendant's prior felony convictions qualified as an element of armed habitual criminal and allowed those convictions to be read into the record, it nevertheless found no prejudice, noting, in part, that the statute necessarily requires some evidence of a defendant's prior offenses. *Id.* ¶¶ 29-30. However, *Nottke* did not discuss *Taylor* and did not recognize that evidence about the defendant's prior convictions could still be achieved by stipulation. Further, it is noteworthy that, in finding no prejudice, the *Nottke* court recognized that the defendant had admitted in an interview that he owned the firearm found in his vehicle.

¶ 40 We agree with *Taylor* and conclude here that, where defendant was willing to stipulate that he had previously been convicted of two *qualifying* offenses under the armed habitual criminal statute, the court was obligated to accept the stipulation because the evidentiary significance of the predicate convictions was the same as a stipulation, except that one created a risk of undue prejudice and the other did not. We acknowledge that the offense of armed habitual criminal requires as an element of the offense proof of specific enumerated offenses. Nevertheless, we agree with *Taylor* that the same rationale used in *Walker* and *Moore* concerning stipulations to the element of felon status for a charge of possession of a weapon by a felon may be applied to armed habitual criminal stipulations. In both instances, once a defendant agrees to stipulate to the predicate felonies, the element the State is required to prove is satisfied and the names and nature of those felonies then become unnecessary and prejudicial. See *Taylor*, 2022 IL App (5th) 180192, ¶ 36 ("nothing in the armed habitual criminal statute requires a court to examine a defendant's underlying conduct in commission of the enumerated offenses in order to find that the State has sustained its burden of proof"). We further agree with *Taylor*'s recognition that while neither a stipulation that the defendant was a felon nor a stipulation to the specific offenses would be satisfactory or appropriate for purposes of the armed habitual criminal statute, a third alternative exists; namely, a stipulation that the defendant was previously convicted of two qualifying offenses under the armed habitual criminal statute.

¶ 41 Although the record here is somewhat vague on the exact wording of the stipulation defendant wanted, as the record contains neither a written response to the motion *in limine* nor a hearing transcript from argument on the motion, the record overall sufficiently reflects that defendant essentially wanted a stipulation akin to those deemed appropriate in *Taylor* (and that were used in the unpublished decisions it cited therein). Specifically, in its written decision, the

trial court summarized that defendant offered to "stipulate to the prior convictions and that the State ha[d] proven those elements of the indictment." After the court's ruling, the State represented that defendant wished to stipulate, but did not want the names of the convictions read to the jury. At the close of evidence, defense counsel reiterated defendant's position that the jury should know only that his prior convictions met the qualifications to be charged as an armed habitual criminal. On appeal, defendant argues that the court should have accepted his stipulation that he was "simply previously convicted of two prior qualifying offenses." Thus, although the specifics of the proposed stipulation remain a bit unclear, the gist is that defendant wished to stipulate that he was previously convicted of two qualifying offenses under the armed habitual criminal statute.

¶ 42    The court, however, agreed with the State that, because defendant did not want the names of the crimes announced to the jury, it could not accept such a stipulation or force the State to do so. This was a misapprehension of the law, which is always an abuse of discretion. See, *e.g.*, *People v. Porter-Boens*, 2013 IL App (1st) 111074, ¶ 10; *Thompson v. Gordon*, 356 Ill. App. 3d 447, 461 (2005). We acknowledge that, when the court here ruled on the State's motion, (1) *Walker* was distinguishable because it concerned possession of a firearm by a felon; (2) *Moore* had not been decided and, ultimately, remains distinguishable for the same reason; and (3) *Taylor*—which, to our knowledge, is the first published decision applying *Walker* and *Moore* to the armed habitual criminal statute—had also not been decided. However, it remains that the court was obligated to weigh relevance against undue prejudice and to exclude relevant evidence where its probative value was substantially outweighed by the danger of unfair prejudice. Ill. R. Evid. 403 (eff. Jan. 1, 2011). Given defendant's desire to stipulate to the prior convictions of the qualifying offenses, the names and nature of those convictions became "unnecessary surplusage without any evidentiary

significance" (*Walker*, 211 Ill. 2d at 338) and, thus, clearly more prejudicial than probative such that the court should have accepted defendant's stipulation and denied the State's motion *in limine*.

¶ 43 We recognize that the State necessarily must introduce certified copies of conviction to meet its burden of proof. We emphasize, however, that, before accepting any stipulation, the trial court *must* ensure that there is a proper basis for it and that, in fact, two or more specific underlying convictions under the armed habitual criminal statute exist and satisfy the mandates. In that vein, although *dicta*, we have no quarrel with the *Taylor* court's suggestions on how such stipulations and instructions may be handled to avoid prejudice but still satisfy the State's burden of proof. See *Taylor*, 2022 IL App (5th) 180192, ¶¶ 48-52. However, once the court has verified with a defendant and the State that the defendant possesses the predicate convictions, and where the defendant is willing to stipulate to those prior convictions as qualifying offenses under the statute, the probative value of the jury learning the *names* of those underlying convictions becomes no greater than the stipulation itself.

¶ 44 The State argues that, if we find that the court erred in permitting the State to present the names of defendant's prior felony convictions, the error was undeniably harmless where, given the evidence in this case, the same jury verdict would have resulted. We disagree. First, as described in *Taylor*, *Walker*, and *Moore*, informing the jury of the name and nature of underlying crimes is unduly prejudicial when the same probative value can be achieved through stipulation. Admitting evidence of prior convictions creates a risk of unfair prejudice in that it may lure the jury into convicting a defendant because he or she is a bad person who is more likely to commit the charged offense, as opposed to on proof of the charged offense. See, *e.g.*, *Moore*, 2020 IL 124538, ¶ 45. Here, the jury learned the names and nature of defendant's two predicate convictions several times: they were read to the jury during *voir dire* as part of the indictment, the State referenced them

when moving to admit certified convictions into evidence and during closing arguments, and the names of the convictions were incorporated into multiple jury instructions. Also, unlike in *Nottke*, for example, where the evidence was overwhelming, the car here was not defendant's, no physical evidence tied him to the weapon, and the jury, at one point, was deadlocked and requested more explanation on the definition of armed habitual criminal. Second, we also reject the State's assertion that, because the jury knew that defendant had a criminal history simply from the name of the offense, *i.e.*, armed *habitual criminal*, there is no reason to believe that it became biased simply by hearing the specific names of defendant's prior felony convictions. At a minimum, this flies in the face of the rationale of *Walker*, *Moore*, and *Taylor*. Further, the argument must be rejected because it implies that, since the name of the crime itself is already prejudicial, an error will almost always be harmless if the crime of armed habitual criminal is at issue.

¶ 45    In sum, we conclude that the court erred in not accepting defendant's stipulation and in granting the State's motion *in limine* to allow the introduction of defendant's prior convictions of home invasion and a violation of the Controlled Substances Act. The error cannot be viewed as harmless. Accordingly, we must remand for a new trial.

¶ 46                                      D. Double Jeopardy

¶ 47    We note that, when a reviewing court remands for a new trial, it must consider whether a new trial would violate double jeopardy. See *People v. McKown*, 236 Ill. 2d 278, 311 (2010). "If the evidence presented at the first trial, including the improperly admitted evidence, would have been sufficient for any rational trier of fact to find the essential elements of the crime proven beyond a reasonable doubt, retrial is the proper remedy. [Citation.] If no rational trier of fact could so find, defendant may not be subjected to a second trial." *Id.*

¶ 48 Here, viewing the evidence in the light most favorable to the State (see *People v. Diggins*, 235 Ill. 2d 48, 58 (2009)), we conclude that the evidence was sufficient to sustain defendant's convictions. With respect to the charge of armed habitual criminal and the element requiring knowing possession of a firearm, Reese testified that he observed defendant looking through the SUV's center console with his cell phone light, the weapon was found in that center console, defendant had been driving the SUV, and defendant was the sole occupant of that vehicle. With respect to defendant's convictions of operating an uninsured vehicle, driving while license revoked, and obstructed registration, the photographic evidence of the rear registration plate, along with Reese's testimony that defendant presented no insurance card and he witnessed defendant driving while his license was revoked, were sufficient evidence from which the jury could have found defendant guilty. As such, there is no double-jeopardy implication to remanding on all counts. "However, we note that nothing in this opinion should be construed as a finding regarding defendant's guilt that would be binding upon remand." *McKown*, 236 Ill. 2d at 314.

¶ 49 Finally, we note that, as we are reversing for a new trial on other grounds, we need not address defendant's alternative argument that comments made by a prospective juror denied his right to a fair trial.

¶ 50                                        III. CONCLUSION

¶ 51 For the reasons stated, the judgment of the circuit court of Boone County is reversed and the cause is remanded.

¶ 52 Reversed and remanded.

*People v. Tolliver*, **2022 IL App (2d) 210080**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Boone County, No. 18-CF-01; the Hon. John H. Young, Judge, presiding. |
| **Attorneys for Appellant:** | Michael P. Schmiege and Adam Bolotin, of Law Offices of Michael P. Schmiege, PC, of Hinsdale, for appellant. |
| **Attorneys for Appellee:** | Tricia L. Smith, State's Attorney, of Belvidere (Patrick Delfino, Edward R. Psenicka, and Leslie Martin, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |